# 26-1016

IN THE

## United States Court of Appeals

FOR THE SECOND CIRCUIT

LYNNE FREEMAN,

*Plaintiff-Appellant*,

---v.---

TRACY DEEBS-ELKENANEY, p/k/a TRACY WOLFF; EMILY SYLVAN KIM; ENTANGLED PUBLISHING LLC; PROSPECT AGENCY, LLC; HOLTZBRINCK PUBLISHERS LLC, d/b/a MACMILLAN; and UNIVERSAL CITY STUDIOS LLC,

*Defendants-Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, Case No. 1:22-CV-02435-CM-SN

**BRIEF OF THE NATIONAL SOCIETY OF ENTERTAINMENT AND ARTS LAWYERS AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFF-APPELLANT AND REVERSAL OF THE DISTRICT COURT'S DECISION**

**Steven T. Lowe, Esq.**
Lowe & Associates
8383 Wilshire Boulevard, Suite 1038
Los Angeles, California 90211
(310) 477-5811
steven@lowelaw.com

*Attorney for the National Society of Entertainment & Arts Lawyers*

**Victoria E. Mulvey, Esq.**
Blakely Law Group
1108 Manhattan Ave, Suite B,
Manhattan Beach, CA 90266
(310) 546-7400
vmulvey@blakelylawgroup.com

*Attorney for the National Society of Entertainment & Arts Lawyers*

# DISCLOSURE STATEMENT

Pursuant to Rules 26.1 and 29(a) of the Federal Rules of Appellate Procedure, Amicus Curiae, the National Society of Entertainment and Arts Lawyers ("NSEAL") states that it is a 501(c)(3) not-for-profit corporation comprised almost entirely of lawyers in the entertainment industry who represent and advocate for artists, authors, and creators. NSEAL was originally formed in 2013 as the California Society of Entertainment Lawyers; it changed its name to its current name in 2023. It does not offer stock, and it has no parent corporation.

## TABLE OF CONTENTS

***STATEMENT OF IDENTIFICATION*** **.......... *8***

***SUMMARY OF ARGUMENT*** **.......... *10***

***ARGUMENT*** **.......... *12***

**I. THE DISTRICT COURT'S SERIAL FILTRATION METHODOLOGY IS INCOMPATIBLE WITH THIS COURT'S HOLISTIC SUBSTANTIAL-SIMILARITY ANALYSIS.......... 12**

a. This Court's Precedents Require a Holistic Comparison of the Works as Integrated Wholes. .......... 12

b. Similarities and Differences Must Be Compared at the Same Level of Generality. .......... 14

c. The District Court Filtered Away the Asserted Similarities Before Conducting Its Holistic Comparison. .......... 16

d. The District Court's Application to Freeman's Work Demonstrates the Error. .......... 17

**II. THE DISTRICT COURT IMPROPERLY ABSTRACTED FREEMAN'S WORK INTO GENERIC CONCEPTS, UNDERMINING THE SELECTION-AND-ARRANGEMENT DOCTRINE. .......... 21**

a. The District Court Evaluated Freeman's Claimed Selection and Arrangement at an Impermissibly High Level of Abstraction. .......... 21

b. Over-Abstraction Undermines Copyright Protection for Works Built from Familiar Elements .......... 22

**III. THE DISTRICT COURT IMPROPERLY EXCLUDED EXPERT OPINION FROM THE SUBSTANTIAL-SIMILARITY ANALYSIS. .......... 23**

a. The District Court Resolved the Ultimate Comparison Without Considering the Full Evidentiary Record. .......... 23

b. Having Relied on Experts to Explain the Genre, the District Court Had No Principled Basis for Excluding Their Opinions from the Ultimate Comparison. .......... 26

***CONCLUSION*** **.......... *31***

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ....................................22
*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023) ....................................6
*Boisson v. Banian, Ltd.*, 273 F.3d 262 (2d Cir. 2001)........................8, 13, 14, 17
*Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693 (2d Cir. 1992)............19
*Crane v. Poetic Prods. Ltd.*, 593 F. Supp. 2d 585 (S.D.N.Y. 2009)...................16
*Dawson v. Hinshaw Music, Inc.*, 905 F.2d 731 (4th Cir. 1990)..........................22
*Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) ..7, 8, 10, 14
*Freeman v. Deebs-Elkenaney*, 823 F. Supp. 3d 402 (S.D.N.Y. 2026) .........passim
*Hanagami v. Epic Games, Inc.*, 85 F.4th 931 (9th Cir. 2023)............................23
*Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996 (2d Cir. 1995) .......................8, 17
*Mazer v. Stein*, 347 U.S. 201 (1954)..................................................................24
*Metcalf v. Bochco*, 294 F.3d 1069 (9th Cir. 2002) ...........................................14
*Nichols v. Universal Pictures Corp.*, 45 F.2d 119 (2d Cir. 1930) ...................... 11
*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57 (2d Cir. 2010)* ...................................8, 10, 13
*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014) ............................6
*Repp v. Webber*, 132 F.3d 882 (2d Cir. 1997) ...................................................22
*Rogers v. Koons*, 960 F.2d 301 (2d Cir. 1992) ..................................................12
*Sandoval v. New Line Cinema Corp.*, 147 F.3d 215 (2d Cir. 1998).................... 11
*Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49 (2d Cir. 1936)..............12
*Swirsky v. Carey*, 376 F.3d 841 (9th Cir. 2004) ................................................22
*Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. 2000)......................22
*Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127 (2d Cir. 2003)............................................10
*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178 (2022) ..............6
*Warner Bros. Inc. v. American Broadcasting Cos.*, 720 F.2d 231 (2d Cir. 1983) ....................................19
*Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366 (2024) ...............................6
*Williams v. Crichton, 84 F.3d 581 (2d Cir. 1996)* ........................................15, 16

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. I, § 8, cl. 8........................................................................24

## OTHER AUTHORITIES

4 *Nimmer on Copyright* § 13D.22[A] (2026) ....................................................13
4 *Nimmer on Copyright* § 13D.22[E] (2026)....................................................22
Robert F. Helfing, *Substantial Similarity in Literary Infringement Cases: A Chart for Turbid Waters*, 21 UCLA Ent. L. Rev. 1 (2014)..............................23
Steven T. Lowe, *Death of Copyright*, L.A. Law., Nov. 2010, at 32 .............23, 24

STATEMENT OF IDENTIFICATION[1]

As more fully set forth in the motion for leave to file this brief, submitted concurrently herewith, the National Society of Entertainment and Arts Lawyers ("NSEAL"), formerly known as the California Society of Entertainment Lawyers, is a nonprofit 501(c)(3) organization, founded in 2013 that represents the interests of creative professionals in the entertainment industry. Its members are attorneys across the United States who represent authors, screenwriters, songwriters, musicians, and other creative professionals in the entertainment and arts industries. Its members have litigated thousands of entertainment and art cases in trial and appellate courts throughout the country, including many significant recent copyright, art, and entertainment cases, and have advised numerous creative professionals on litigation, licensing, and intellectual property strategy. Its members have also obtained appellate decisions in cases involving artists' rights and entertainment law. NSEAL has filed amicus briefs in the Supreme Court of the United States in four cases addressing important issues of copyright law—*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014); *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178 (2022); *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508

[1] In compliance with Rule 29(a)(4)(E), Counsel for the Parties did not author this brief. The Parties have not contributed to fund the preparation or submission of this brief. No person other than NSEAL, its members, or its counsel contributed money that was intended to fund the preparation or submission of this brief. Because counsel for Appellant includes Doniger / Burroughs, and a partner of that firm serves as NSEAL's East Coast Director, NSEAL screened that individual and the firm from all participation in the decision, preparation, review, approval, and funding of this brief.

(2023); and *Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366 (2024)—all of which reached conclusions consistent with the reasoning advanced in NSEAL's briefs.

NSEAL's members represent creators whose work frequently depends on original combinations of familiar elements: genre fiction writers who often arrange established tropes in new and different ways; screenwriters who build stories around familiar character archetypes; and composers who transform common harmonic progressions into original works. For these creators, copyright protection does not rest on the novelty of any individual element, but on the originality of how those elements are selected, combined, and arranged. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 341, 111 S. Ct. 1282, 1285, 113 L. Ed. 2d 358 (1991).

A rule enabling courts to dissect a creative work into isolated components, classify each as a mere "convention," and conclude that no protectable expression remains would significantly erode copyright protection for many commercially successful and sufficiently original works composed of familiar elements. If the decision below stands, courts may apply that reasoning in comparable cases and eliminate protection for a large segment of the creators that NSEAL's members represent. NSEAL submits this brief under Federal Rule of Appellate Procedure 29(a)(3), pursuant to the accompanying motion for leave, to address the decision's consequences for creators.

## SUMMARY OF ARGUMENT

The decision below largely rests on three independent legal errors, each with consequences that will likely reach far beyond this case. First, the District Court employed a filtration methodology to compare the works that this Court's precedent does not permit. Rather than comparing the works as integrated wholes, the Court eliminated each asserted similarity in setting, characters, plot, and pace as a trope or scènes à faire before undertaking its "total concept and overall feel" analysis, effectively leaving nothing meaningful to compare. That approach conflicts with this Court's substantial-similarity jurisprudence, including *Boisson v. Banian, Ltd.*, 273 F.3d 262 (2d Cir. 2001), *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57 (2d Cir. 2010), *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996 (2d Cir. 1995), and *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991).

Second, the District Court evaluated Freeman's work at an impermissibly high level of abstraction, reducing her manuscript to generic concepts, rather than examining the author's particular selection, coordination, and arrangement of expressive elements. *See Freeman v. Deebs-Elkenaney*, 823 F.Supp.3d 402, 453 (S.D.N.Y. 2026) (reducing Freeman's work to a story of "loss; ignorance; young love; discovery; challenge; and overcoming challenge"). By replacing Freeman's expressive choices with an abstract thematic summary, the decision undermines the selection-and-arrangement doctrine recognized by this Court.

Third, although the District Court relied on expert testimony to identify genre conventions and expressly recognized both Parties' experts as qualified, it refused to consider those experts' opinions on the ultimate question of substantial similarity. Instead, the Court resolved that question on summary judgment based solely on its own evaluation of the works after excluding the very expert analysis it had deemed necessary to understand the relevant literary genre. That the works belong to a convention-heavy genre is undisputed. Literary works get thick protection as a matter of black letter law. However, *Feist* tells us that copyrightability only requires a modest originality threshold, and the conventionality of individual components does not establish that their particular selection, sequence, and interrelationship are themselves dictated by the genre. Amicus acknowledges that this Court's law distinguishes between permissible expert analysis and the ultimate ordinary-observer determination. Experts may assist on actual copying, analytical dissection, and the identification of unprotectable conventions; they ordinarily may not supply the ultimate lay-observer judgment of unlawful appropriation in a literary work. The District Court could therefore exclude an expert's ultimate substantial-similarity conclusion. But it should not have disregarded expert evidence responsive to the fundamental analysis—whether the asserted combination, as opposed to its isolated ingredients, was itself original in the genre.

If left uncorrected, the decision below risks narrowing copyright protection for works built from familiar creative conventions by permitting

courts to eliminate alleged similarities through serial filtration, evaluate originality only at improper abstract thematic levels, and resolve specialized questions of literary similarity without considering qualified expert opinion. This will substantially harm NSEAL's members and the creators they represent—artists who are typically far less well-funded than the powerful entertainment conglomerates that exploit their works.

## ARGUMENT

## I. THE DISTRICT COURT'S SERIAL FILTRATION METHODOLOGY IS INCOMPATIBLE WITH THIS COURT'S HOLISTIC SUBSTANTIAL-SIMILARITY ANALYSIS.

### a. This Court's Precedents Require a Holistic Comparison of the Works as Integrated Wholes.

This Court's precedent is in direct conflict with the approach the District Court took below. Under the Second Circuit's "more discerning ordinary observer" test, courts compare the works' "total concept and overall feel," guided by "good eyes and common sense." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 66 (2d Cir. 2010). That test rests on a fundamental principle: although individual elements may be commonplace or unprotectable, copyright protects an author's original selection, coordination, and arrangement of those elements. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348–51 (1991).

Courts therefore may not reduce a work to isolated components before comparing it to the allegedly infringing work. This Court rejected precisely that approach in *Boisson v. Banian, Ltd.*, explaining that dissecting works into individual features would leave "almost nothing" copyrightable, since virtually every creative work consists of familiar building blocks. *Id*, 273 F.3d 262, 272 (2d Cir. 2001). Courts must instead evaluate the cumulative effect of protectable and unprotectable elements as selected and arranged within the work as a whole and determine if there is creativity embedded in the arrangement. *Feist*, 499 U.S. at 348. The same principle applies with equal force here. *See Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc*., 338 F.3d 127, 133–34 (2d Cir. 2003) (holding that a work's protectable expression may lie in the original selection and arrangement of otherwise common elements); *Knitwaves, Inc. v. Lollytogs Ltd*., 71 F.3d 996, 1003–04 (2d Cir. 1995) (protecting the author's original selection and arrangement of elements). Every creative work necessarily contains standard or unprotectable material; the question is whether the defendant appropriated the plaintiff's original expression as reflected in the work's overall feel or aesthetic. *See Tufenkian*, 338 F.3d at 130.

A court applying the "more discerning" inquiry may distinguish protectable from unprotectable expression, but it must still compare the works as integrated wholes. Substantial similarity admits there are "no bright-line rules," and courts must weigh the cumulative effect of the alleged similarities rather than filtering

them away, which is what the District Court did here. *Sandoval v. New Line Cinema Corp.*, 147 F.3d 215, 217 (2d Cir. 1998).

**b. Similarities and Differences Must Be Compared at the Same Level of Generality.**

A court should not describe an asserted similarity at a high level of abstraction, where it appears generic, while examining the corresponding difference at a much finer level of detail. Comparison at mismatched levels of generality systematically discounts similarity, because almost any similarity can be made to look commonplace if described broadly enough, and almost any difference can be made to look decisive if described narrowly enough. See *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir. 1930) (explaining that "a great number of patterns of increasing generality will fit equally well" as more detail is omitted from a work).

The District Court's decision below illustrates the asymmetry. Addressing the works' shared Alaskan setting, the Court reasoned that "Alaska is a place known to the public, so setting a novel in Alaska is not copyrightable." *Freeman*, 823 F. Supp. 3d at 435. At that level of generality, the similarity is unremarkable. Yet in cataloguing the differences within that same setting, the Court adopted a far more granular frame of reference, distinguishing a work set in "Anchorage, Alaska's largest city" from one set "in the remote Alaskan mountains near Denali, 250 miles north of Anchorage." *Id.* By characterizing the shared setting only at the broad level of "Alaska"—a generalized,

unprotectable similarity—the Court contrasted that abstraction with the far more specific differences in each work's particular locations and treatment of the setting.

Differences of that kind may, of course, bear on substantial similarity. But they must be weighed at the same level of specificity as the similarities they are offered to offset, and considered alongside the work's other expressive choices. This Court has recognized the difficulty. This Court has also observed that the proposition that dissimilarity does not excuse copying and the proposition that sufficient changes may avoid infringement "are not facially inconsistent," yet acknowledged that "in practice the distinction between the two propositions has become somewhat blurred." *Warner Bros. Inc. v. American Broadcasting Cos.*, 720 F.2d 231, 241 (2d Cir. 1983). This Court has likewise held that "no plagiarist can excuse the wrong by showing how much of his work he did not pirate," *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936). *See also Rogers v. Koons*, 960 F.2d 301, 308 (2d Cir. 1992) (holding that minor differences do not defeat infringement where substantial similarity exists, and only when dissimilarities outweigh trivial similarities may a court find no infringement). Whether that condition is met cannot be determined when the two sides of the comparison are described at different levels of abstraction. Only a related error—abstraction applied not to the comparison of the two works but to the characterization of Freeman's own work—is addressed in Section II below.

**c. The District Court Filtered Away the Asserted Similarities Before Conducting Its Holistic Comparison.**

Although the District Court correctly recited the governing legal standard, it actually applied a fundamentally different methodology in its analysis. The Court acknowledged that it should not "dissect the works at issue into their separate components and compare only the protectable elements" and instead should be "principally guided by comparing the contested [work's] total concept and overall feel." *Freeman*, 823 F. Supp. 3d at 424 (quoting *Peter F. Gaito*, 602 F.3d at 66). Its analysis, however, proceeded in precisely the opposite manner.

The Court analyzed the asserted similarities category by category—setting, characters, plot, and pace—determining whether each similarity constituted a trope or scènes à faire before reaching its discussion of "total concept and feel." *Id.* at 434–52. By the time the Court undertook its overall comparison, it had already eliminated each alleged similarity from consideration. *Id.*at 444–45.

That methodology cannot be reconciled with this Court's precedents. As this Court explained in *Warner Bros.*, "similarity *cannot be rejected by isolating as an idea each characteristic* the characters have in common." 720 F.2d at 243 (emphasis added). The same principle applies to plot, setting, pacing, and narrative structure. *See Boisson*, 273 F.3d at 272 (rejecting element-by-element dissection of *quilt designs* in favor of comparison of the overall arrangement); *see also 4 Nimmer on Copyright* § 13D.22[A] (2026) (recognizing that

infringement may exist even where no individual component is independently protectable).

Rather than asking whether Freeman's original combination of expressive elements had been appropriated, the District Court first determined that each asserted similarity was individually unprotectable and then simply removed those similarities from the ultimate comparison. The Court did state, in a single paragraph, that it had considered the similarities collectively as well, but as explained below, that statement relates to the filtration analysis performed by the Court rather than the required holistic approach. That is the very approach *Boisson* rejected. *Boisson*, 273 F.3d at 272.

**d. The District Court's Application to Freeman's Work Demonstrates the Error.**

The District Court's own reasoning exposes the flaw. The Court correctly recognized that "the manner of *expressing* the common trope" of "boy meets girl from opposing factions/boy and girl fall in love/boy and girl end up dead" is what "distinguishes Romeo and Juliet from West Side Story." *Freeman*, 823 F. Supp. 3d at 427. That principle—that copyright protects the *expression* of how ideas are combined and arranged, even when stories draw on familiar literary conventions—can still infringe if the defendant copies the plaintiff's particular manner of expressing them. Yet it did not apply that same principle here.

The Parties' experts agreed on a catalog of recurring features of young-adult paranormal romance that qualify as scènes à faire. *Id.* at 425–27. But,

rather than asking whether Freeman's particular selection and arrangement of those elements reflected original expression, the Court measured each asserted similarity against the catalog and treated any match as sufficient to remove it from consideration.

The District Court deprived the artist Plaintiff of fundamental rights. A plaintiff who alleges more than the shared presence of familiar genre conventions—who identifies a distinctive combination of expressive choices spanning character, relationship, setting, and narrative sequence—is entitled to have that combination evaluated as a whole. *See Boisson*, 273 F.3d at 272; *Feist*, 499 U.S. at 348–51. Appellant did that in the present case with a mountain of evidence, including the testimony of multiple experts. *See Freeman*, 823 F. Supp. 3d at 426–27. Amicus takes no position on how that inquiry should come out on this record. The error is methodological: because the Court treated each feature as accounted for once labeled a trope, the combined inquiry was never reached.

Another court of appeals, confronting a similar question, reached the opposite conclusion: recognizing that the arrangement of admittedly common elements can itself constitute protectable expression. *See Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002) (holding that, although none of the shared features of two television projects was independently protectable, "the particular sequence in which an author strings a significant number of unprotectable elements can itself be a protectable element").

The District Court's attempt to pretextually and summarily apply the selection-and-arrangement test by a blanket statement does not provide an adequate record that it actually did. Immediately before applying its methodology to Freeman's manuscripts, the lower court concluded: "[f]or the avoidance of doubt," it had also considered whether the asserted similarities, "taken collectively, produce a protectable selection or arrangement which Crave appropriates," and concluded that "[t]hey do not." *Freeman*, 823 F. Supp. 3d at 433. But that single, conclusory sentence—offered only after the element-by-element analysis described above, *see* Sections I.c–d—cannot replace the required, integrated comparison that *Boisson*, *Peter F. Gaito*, and *Knitwaves* require.

Verbatim copying of a single extended passage is comparatively easy to evaluate. The analysis is more difficult when the alleged appropriation consists of a combination of familiar genre elements used together. Works within the same genre may predictably share certain tropes, but they do not necessarily select the same combined subset of those tropes, arrange them in the same way or sequence, or develop them through closely corresponding expressive choices. Thus, the fact that each element can individually be characterized as a genre convention does not answer whether the particular combination is itself unoriginal.

The selection-and-arrangement inquiry must consider not only whether the component elements are common, but whether the plaintiff's particular

combination, sequence, relationships, and treatment of those elements are likewise conventional. Otherwise, a series of closely corresponding creative choices may be discounted merely because each component, considered separately or abstractly, can be traced to a familiar genre convention. This concern does not revive the "scattershot" theory this Court rejected in *Williams v. Crichton*. It is true that a plaintiff cannot establish substantial similarity merely by compiling a list of generic, unrelated similarities and asking a court to aggregate them. *Williams*, 84 F.3d at 590. But that is different from alleging that a particular set of common elements has been selected, related, sequenced, and developed through closely corresponding expressive choices.

The principle recognized above, *see supra* Section I.c, applies with equal force where the claimed expression lies in the relationship among plot, character, setting, sequence, and other narrative choices. The question is not whether the asserted similarities, standing alone, prove infringement. It is whether the Court meaningfully considered the claimed arrangement and the way its component choices operate together before concluding that nothing protectable remained, *see Crane v. Poetic Prods. Ltd.*, 593 F. Supp. 2d 585, 590 (S.D.N.Y. 2009) (where the Court held that facts, historical events, and plots remain free for all to use, but an author's particular selection, coordination, and arrangement of those elements may itself be protected). Copyright law should not make alleged appropriation less cognizable merely because the asserted

copying is distributed across several related expressive choices rather than concentrated in a single passage or scene.

## II. THE DISTRICT COURT IMPROPERLY ABSTRACTED FREEMAN'S WORK INTO GENERIC CONCEPTS, UNDERMINING THE SELECTION-AND-ARRANGEMENT DOCTRINE.

### a. The District Court Evaluated Freeman's Claimed Selection and Arrangement at an Impermissibly High Level of Abstraction.

The District Court did not evaluate Freeman's original selection and arrangement of expressive elements. Instead, it summarized her work as consisting of six broad concepts: "loss; ignorance; young love; discovery; challenge; and overcoming challenge." *Freeman*, 823 F. Supp. 3d at 453. Those descriptions do not capture Freeman's creative expression. They describe themes common to countless works of fiction. A story reduced to "young love" or "discovery" has been stripped of the very expressive choices copyright protects—its characters, settings, relationships, sequence of events, and narrative structure. *See Knitwaves*, 71 F.3d at 1003 (rejecting argument that infringement analysis must dissect a work into isolated copyrightable components).

That level of abstraction is incompatible with the selection-and-arrangement doctrine. Copyright law does not protect the abstract proposition that a story involves love, loss, or self-discovery. It protects the author's particular

expression of those ideas through specific creative choices. *Boisson*, 273 F.3d at 266. By evaluating Freeman's work through broad thematic categories rather than through the concrete expressive decisions reflected in the manuscript itself, the District Court effectively replaced the protected work with an abstract synopsis.

Freeman did not claim ownership over stories involving supernatural romance, hidden identities, or personal transformation. She alleged that Defendants copied her particular combination of expressive choices—her "unique selection and arrangement of characters, settings, and plot elements." *Freeman*, 823 F. Supp. 3d at 452. Those choices included, among other things, the relationships among the characters, the sequence of narrative developments, the setting, the supernatural mythology, and the interaction of those elements throughout the work. Whether that particular combination reflects protectable expression is the question the selection-and-arrangement doctrine requires the lower court to answer. The District Court instead asked only whether its own generalized description of the story was original.

**b. Over-Abstraction Undermines Copyright Protection for Works Built from Familiar Elements.**

The consequences of the lower court's approach extend well beyond this case. Nearly every work of fiction can be summarized as involving love, conflict, loss, discovery, sacrifice, or redemption. If originality is evaluated at that level of abstraction, few creative works could satisfy the selection-and-

arrangement doctrine because every work would appear to consist only of familiar ideas.

As *Nichols* recognized, abstraction eventually reaches a point where protected expression disappears and only unprotectable ideas remain. 45 F.2d at 121. By characterizing Plaintiff's work so broadly, the lower court abstracted Freeman's manuscript into six broad thematic categories rather than evaluating her particular selection and arrangement of expressive choices, the District Court asked only whether its own summary of the story was original—not whether Defendants copied Freeman's expression.

## III. THE DISTRICT COURT IMPROPERLY EXCLUDED EXPERT OPINION FROM THE SUBSTANTIAL-SIMILARITY ANALYSIS.

### a. The District Court Resolved the Ultimate Comparison Without Considering the Full Evidentiary Record.

The District Court concluded that, once informed about the conventions of young-adult paranormal romance, it required no expert assistance to determine whether the works were substantially similar. *Freeman*, 823 F. Supp. 3d at 425. It therefore declined to consider either Party's expert opinions about the ultimate legal issue. The Court reasoned that "a reader armed with information about what elements are commonly found in books of this genre is perfectly capable of ascertaining, from her own reading," whether those elements appear

in the parties' works. *Freeman*, 823 F. Supp. 3d at 427. That conclusion is belied by the lower court's decision.

Substantial similarity is ordinarily a question for the factfinder; although summary judgment is appropriate where no reasonable jury could find substantial similarity, this Court has long recognized that the issue is "frequently a fact issue for jury resolution." *Warner Bros.*, 720 F.2d at 239–40. Before concluding that no reasonable jury could find substantial similarity, the District Court necessarily must evaluate the evidentiary record developed by the Parties.

Under this Court's precedents, expert opinion on the ultimate question of substantial similarity is ordinarily unnecessary because that determination is governed by the response of the "ordinary lay observer." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 713–14 (2d Cir. 1992). Amicus does not ask this Court to disturb that rule. However, *Altai* even recognized a narrow exception for "highly complicated and technical subject matter" that is "somewhat impenetrable by lay observers," while making clear that it did "not intend to disturb the traditional role of lay observers in judging substantial similarity in copyright cases that involve the aesthetic arts, such as music, visual works or literature." *Id.* at 714.

That rule, however, governs only the ultimate question of unlawful appropriation. It does not displace expert evidence bearing on the antecedent, analytical question the District Court itself treated as requiring specialized knowledge: whether combinations of elements are original, the qualitative

importance of the similarities, and which elements of this genre are conventional, and whether the particular combination Freeman claims is conventional. Since the District Court relied on expert testimony to catalog the tropes and scènes à faire it deemed necessary to understand before comparing the works, and thereby found genre expertise indispensable to identifying what is unprotectable, the Court had no sound basis for treating that same expertise as irrelevant to whether the asserted selection and arrangement—as distinct from its isolated ingredients—was itself original in the genre.

Here, the District Court did not question the qualifications of either expert. To the contrary, it acknowledged that Appellant's expert, Professor Kathryn Reiss, and Respondents' expert, Emily Easton, were both "amply qualified" to testify regarding the relevant literary genre. *Freeman*, 823 F. Supp. 3d at 427 n.12. Nevertheless, it categorically declined to consider either expert's opinion on "the ultimate question of whether Freeman's work and Wolff's are substantially similar." *Id.* at 427. While it could perhaps ignore that portion of opinions, it should not have ignored the rest of the opinions, especially where it is self-evident and common sense that the comparison of thousands of pages of literature does implicate highly complicated and technical subject matter. The Court's conclusion that no reasonable jury could find substantial similarity apparently does not take into consideration whether Plaintiff's experts are reasonable.

### b. Having Relied on Experts to Explain the Genre, the District Court Had No Principled Basis for Excluding Their Opinions from the Ultimate Comparison.

The District Court's exclusion of expert opinion is particularly difficult to reconcile with the role those experts played throughout the litigation. The Court expressly acknowledged that it does "not ordinarily read books in this genre" and could not assume that jurors would be familiar with young-adult paranormal romance either. *Freeman*, 823 F. Supp. 3d at 425. It therefore relied on expert testimony to explain genre conventions and scènes à faire—subjects the Court recognized required specialized knowledge.

Yet the Court drew an artificial line at the very point the expert analysis became most relevant. It accepted expert assistance in identifying the building blocks of the genre but refused to consider either expert's opinion regarding whether Freeman's particular selection, coordination, and arrangement of those elements resulted in substantially similar expression. The result was that the dispositive literary comparison—the application of those concepts to the works themselves—was performed exclusively by the Court.

The Court's treatment of the two reports was also asymmetric. Where Professor Reiss did not contradict Ms. Easton's catalog of genre conventions, the Court concluded that "there is no disputed issue of fact for a jury to resolve" and adopted the twenty-four additional elements Easton had identified. *Freeman*, 823 F. Supp. 3d at 427. But even though Easton did not contradict

Reiss—the Court expressly noted that, "[u]nlike Reiss, Defendants' expert does not opine on the similarity of expression"—the Court did not treat Reiss's opinion as uncontested. It set that opinion aside, reasoning that "there is no need for an expert to testify about uniqueness of expression." In fact, there is. Silence by one side established a fact; but silence by the other apparently established nothing. *Id.* at 427.

That ruling matters because the expert opinion the Court ignored went to the heart of the matter at issue. Reiss opined, as the Court described it, that "it is not common for romantasy works to incorporate all of the elements described above, while Freeman's novel does." *Id.* Whether a genre customarily combines a given set of conventions in a similar way is an important question regarding originality. It is also the question a court must answer before it can know what to look for, because the conventionality of each ingredient does not establish the conventionality of the entire recipe. While an expert may not tell the factfinder whether two works are substantially similar, the expert does need to identify the pattern in the plaintiff's work which is repeated in the defendant's work. Also, an expert may tell the factfinder what the genre does and does not conventionally do—which is precisely the "limited purpose" for which the District Court said expert opinion was admissible. *Id.* at 427.

Setting aside uncontroverted expert evidence on that question and then resolving it against the non-moving party on the Court's own reading is difficult to reconcile with the summary judgment standard. "Credibility determinations,

the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see Repp v. Webber*, 132 F.3d 882, 890–91 (2d Cir. 1997) (reversing summary judgment where the District Court resolved a disputed question by relying on its own examination of the works alongside the opposing party's expert evidence).

Others have likewise recognized the value of expert testimony in evaluating creative works. The Ninth Circuit has explained that its extrinsic test "requires 'analytical dissection of a work and expert testimony.'" *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004) (quoting *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000)). Likewise, the Fourth Circuit has cautioned that "only a reckless indifference to common sense would lead a court to embrace a doctrine that requires a copyright case to turn on the opinion of someone who is ignorant of the relevant differences and similarities between two works." *Dawson v. Hinshaw Music, Inc.*, 905 F.2d 731, 735 (4th Cir. 1990). *See also* 4 *Nimmer on Copyright* § 13D.22[E] (2026) (recognizing that expert testimony may be particularly useful where evaluating similarity requires specialized knowledge beyond ordinary experience).

Amicus does not contend that expert testimony must always control the substantial-similarity inquiry or that district courts may never resolve copyright cases on summary judgment. Nor does Amicus suggest that experts may

substitute their judgment for that of the court or the jury. But where a court acknowledges that specialized knowledge is necessary to understand the relevant artistic field, admits qualified experts for that purpose, and then excludes those same experts from addressing the dispositive comparison, it risks resolving substantial similarity without considering the full evidentiary record developed by the parties.

The problem is especially pronounced in literary copyright cases. Courts routinely rely on expert testimony when comparing technical or specialized works such as computer software and musical compositions, yet literary works are often treated differently despite presenting equally specialized questions of authorship, genre, and expressive structure. Novels are complex narrative works that require technical knowledge and a nuanced approach—"[i]n many cases, [a]pplication of the extrinsic test requires analytical dissection of a work and expert testimony." *Hanagami v. Epic Games, Inc.*, 85 F.4th 931, 945 (9th Cir. 2023) (citation omitted). Expert testimony is required "because most judges are not sufficiently trained in the specifics of the art form at issue to make reliable conclusions about similarity." *Id. See also* Robert F. Helfing, *Substantial Similarity in Literary Infringement Cases: A Chart for Turbid Waters*, 21 UCLA Ent. L. Rev. 1, 13–14, 29–30 (2014) (observing that "few courts have gone further in their analyses than to simply identify similarities and differences" and that courts routinely dismiss literary infringement claims by dissecting works into individually unprotectable elements—theme, setting, mood, pace—while

declining expert assistance to evaluate whether those elements, in combination, form a protectable structure); Steven T. Lowe, *Death of Copyright*, L.A. Law., Nov. 2010, at 32. *Death of Copyright* identified forty-eight copyright infringement actions litigated to final judgment against motion picture studios and television networks in this Circuit and the Ninth Circuit over the preceding two decades, and reported that the defendant prevailed in every one—most often on summary judgment, with only two reaching a jury. *Id.* Amicus offers that figure as illustrative of a documented pattern rather than as a current tally. But the pattern it describes is the one this case presents: the substantial-similarity question resolved by the Court, without expert assistance and without a jury.

That pattern undermines the constitutional design. The Intellectual Property Clause empowers Congress "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. I, § 8, cl. 8. The Supreme Court has explained the "economic philosophy" behind this grant: "encouragement of individual effort by personal gain is the best way to advance public welfare through the talents of authors and inventors." *Mazer v. Stein*, 347 U.S. 201, 219 (1954). But that incentive exists only if authors can enforce their exclusive rights. When courts resolve substantial-similarity questions on summary judgment—without expert guidance and without juries—they deny authors the very protection the Framers designed copyright to provide.

## CONCLUSION

For the foregoing reasons, Amicus respectfully requests that this Court reverse the District Court's grant of summary judgment and remand for further proceedings consistent with this Court's opinion.

Respectfully submitted,

Dated: August 5th, 2026

/s/ Victoria Mulvey
**Victoria E. Mulvey, Esq.**
Blakely Law Group
1108 Manhattan Ave, Suite B,
Manhattan Beach, CA 90266
(310) 546-7400
vmulvey@blakelylawgroup.com

*Attorney for the National Society of Entertainment & Arts Lawyers*

CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of [Second Circuit Rules 29.1(c) and 32.1(a)(4)/Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)] because this brief contains 4,842 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac Version 16.95.1 (25031528) in 14 point TIMES NEW ROMAN font.

Dated: August 5, 2026

Manhattan Beach, California

/s/ Victoria E. Mulvey__________

**Victoria E. Mulvey, Esq.**
*Attorney for the National Society of Entertainment & Arts Lawyers*